UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EARL K. LAWRENCE, JR.                                              CIVIL ACTION

VERSUS                                                             No. 17-9775

GREAT LAKES DREDGE & DOCK                                          SECTION I
COMPANY, L.L.C. OF LOUISIANA

## ORDER & REASONS

Before the Court is plaintiff Earl K. Lawrence, Jr.'s ("Lawrence") motion[1] for reconsideration. Lawrence urges the Court to reconsider its order[2] granting defendant Great Lake Dredge & Dock Company, L.L.C.'s ("GLDD") motion[3] *in limine* to exclude certain opinions from Lawrence's expert economist, Shael N. Wolfson ("Wolfson"). For the following reasons, the motion is denied.

### I.

This case arises under the Jones Act. In December 2015, Lawrence was injured while working as a seaman aboard the M/V TEXAS JUNIOR ("the vessel") as a GLDD employee.[4] He alleges that his injuries are the direct result of GLDD's negligence and the vessel's unseaworthiness.[5]

GLDD filed a motion *in limine* challenging the admissibility of Wolfson's anticipated expert testimony.[6] In his expert report, Wolfson calculated Lawrence's

---

[1] R. Doc. No. 30.
[2] R. Doc. No. 28.
[3] R. Doc. No. 19.
[4] R. Doc. No. 1, at 2.
[5] *Id.* at 3.
[6] R. Doc. No. 19.

1

"diminution of earning capacity and associated economic impairment" as a result of the December 2015 incident and was expected to offer related testimony at trial.[7] To determine Lawrence's lost wages, Wolfson calculated his earning base using Lawrence's actual earnings in 2013—two years before he was injured.[8]

The Court granted GLDD's motion with respect to Wolfson's testimony, concluding that he would not be permitted to testify at trial as to a lost wages calculation based solely on Lawrence's 2013 earnings.[9] Lawrence now urges the Court to reconsider its ruling "to correct legal error" and "prevent manifest injustice."[10]

## II.

Reconsideration of interlocutory orders is governed by Federal Rule of Civil Procedure 54(b). *Namer v. Scottsdale Ins. Co.*, 314 F.R.D. 392, 393 (E.D. La. Apr. 5, 2016) (Africk, J.) (citing *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014)). Rule 54(b) states that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. Pro. 54(b). Under Rule 54(b), a district court may "reconsider and reverse its decision for any reason it deems sufficient, even in the

---

[7] R. Doc. No. 19-2, at 1.
[8] *Id.* at 2.
[9] *See* R. Doc. No. 28, at 7–11.
[10] R. Doc. No. 30, at 1. The disputed order did not grant GLDD's motion *in limine* in its entirety. In Part B, however, it did grant that portion of GLDD's motion requesting that the Court prohibit Wolfson from testifying about lost wages using a calculation based solely on Lawrence's 2013 earnings. R. Doc. No. 28, at 7–10. Part B is the only portion of the order that Lawrence now moves the Court to reconsider. R. Doc. No. 30-1, at 1.

2

absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (per curiam) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).

Compared to Rule 59(e) of the Federal Rules of Civil Procedure—which governs motions to alter or amend final judgments—the Fifth Circuit has explained that Rule 54(b)'s standard is "less stringent" and "more flexible." *Id.* at 336–37. For example, unlike in a Rule 59(e) determination, a court conducting a Rule 54(b) inquiry may consider new arguments that could have been previously raised. *See McClendon v. U.S.*, 892 F.3d 775, 781 (5th Cir. 2018).[11]

When deciding whether to grant a Rule 54(b) motion, courts must "construe the procedural rules with a preference toward resolving the case on the merits" and weigh "the interests of justice." *Id.* at 338. However, courts should exercise their power "sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays," which disserve the interests of justice. *Ha Thi Le v. Lease Fin. Grp., LLC*, No. 16-14867, 2017 WL 2911140, at *2 (E.D. La. July 7, 2017) (Africk, J.) (quoting *Castrillo v. Am. Home Mortg. Servicing Inc.*, No. 09-4369, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.)).

---

[11] Both Lawrence and GLDD contend that Rule 59(e) governs the present motion. R. Doc. Nos. 30-1, at 1; R. Doc. No. 31, at 1–2. However, motions to reconsider interlocutory orders are not properly reviewed under Rule 59(e). *Austin*, 864 F.3d at 336 (holding that the district court erred in applying Rule 59(e) to a motion for reconsideration of an interlocutory order because the court should have applied the "less stringent" Rule 54(b)). The Court will therefore address Lawrence's motion applying the Rule 54(b) inquiry, even though both parties base their arguments on Rule 59(e) standards.

3

District courts have generally considered a number of factors when engaging in a Rule 54(b) analysis, including whether the moving party "demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based," whether an "intervening change in the controlling law" has occurred, whether the moving party presents the district court with new evidence, and "whether the motion is necessary in order to prevent manifest injustice." *See Castrillo*, 2010 WL 1424398 at *4 (considering Rule 59(e) factors while performing the Rule 54(b) inquiry).

### III.

Lawrence argues that the Court's ruling "limits a Jones Act seaman . . . from presenting evidence to the jury that his personal earnings capacity should be based on the 2013 figure."[12] This is a mischaracterization of the Court's order. First, Lawrence overgeneralizes the order, which simply prohibited this particular expert from testifying about this particular calculation because the calculation's factual foundation is contrary to law.[13]

Second, the Court never precluded plaintiffs generally from proffering expert testimony based on a single year's earnings other than the year in which a plaintiff was injured. To the contrary, the Court explained that it could "imagine situations in which Wolfson's use of plaintiff's 2013 earnings could be appropriate."[14] However,

---

[12] R. Doc. No. 30-1, at 2.
[13] R. Doc. No. 28, at 8–9.
[14] *Id.* at 9.

4

Lawrence's circumstances do not fall within any of those situations.[15] He has yet to offer any "suggested facts that warrant [his] approach," which runs counter to the traditional calculation method set out in *Culver v. Slater Boat Co.*[16] 722 F.2d 114, 117 (5th Cir. 1983), *cert. denied*, 467 U.S. 1252 (1984) (hereinafter "*Culver II*") ("[C]alculation of lost income stream begins with the gross earnings of the injured party at the time of the injury."); *see also Randolph v. Laeisz*, 896 F.2d 964, 967 (5th Cir. 1990) ("*Culver II* requires the court to use [the plaintiff's] gross earnings at the time of the injury.").

According to Lawrence, the law permits him to present evidence to a jury to demonstrate that "he had the capacity to earn an amount equivalent of the 2013 income figure but for this accident" in light of the inconsistency in his income levels between 2012 and 2015.[17] The Fifth Circuit has permitted departures from *Culver II*'s general rule when earnings data is inconsistent, *see In re Parker Drilling Offshore USA LLC*, 323 F. App'x 330, 335 (5th Cir. 2009), and the Court agrees with Lawrence that his earnings data is inconsistent. For example, the difference between the amount Lawrence earned in 2013 and the amount he earned in 2015 (annualized) is approximately $28,000. *See, e.g.*, *Nelson v. Cooper T. Smith Stevedoring Co., Inc.*, No. 12-2890, 2013 WL 4591362, at *1 (E.D. La. Aug. 28, 2013) (Vance, J.) (concluding the plaintiff had an "inconsistent work history" considering, among other things, he held multiple jobs with "varying rates of pay in the years before his accident") (citation

---

[15] *Id.*
[16] *Id.*
[17] R. Doc. No. 30-1, at 2–3.

5

omitted); *Daigle v. L & L Marine Trans. Co.*, 322 F. Supp. 2d 717, 731 (E.D. La. June 14, 2004) (Fallon, J.) (noting that "[m]arine work is not as predictable as shore side work"; summarizing the plaintiff's earnings for 1999, 2000, and 2001 as approximately $79,000, $63,000, and $31,000 respectively; and annualizing his income from the year he was injured to estimate his earning capacity).

Often, permissible variations of *Culver II*'s benchmark involve averaging a plaintiff's earnings from several prior years. *See, e.g.*, *Tran v. Abdon Callais Offshore, LLC*, No. 12-999, 2014 WL 12538905, at *2 (E.D. La. Sept. 22, 2014) (Zainey, J.) (holding that "an average derived from the earnings of each plaintiff over the three previous years [was] reasonable to use in determining each injured person's earnings at the time of injury" in accordance with *Culver II*); *In re Parker Drilling*, 323 F. App'x at 335 (approving the district court's calculation averaging the plaintiff's earnings over the previous five years); *Nelson*, 2013 WL 4591362, at *1 ("It is well-established in the Fifth Circuit that the trier of fact may rely on lost income stream calculation that is based on an average wage rate, particularly if the plaintiff has an inconsistent work history."); *Levine v. Zapata Protein (USA), Inc.*, 961 F. Supp. 942, 945–46 (E.D. La. Nov. 25, 1996) (Fallon, J.) ("Because of the uncertainty and unpredictability of the plaintiff's employment, it is fair and reasonable to utilize the average of these years in order to determine the appropriate annual wage at the time of the plaintiff's injury.").

Alternatively, the Fifth Circuit and other sections of this Court have determined a plaintiff's earning base by annualizing his income from the year he was

6

injured. *E.g.*, *Noel v. Inland Dredging Co., LLC*, No. 17-1989, 2018 WL 1911821, at *3 (E.D. La. Apr. 23, 2018) (Vance, J.) (permitting expert testimony based on a calculation annualizing the plaintiff's wages from the year he was injured); *Lopinto v. Crescent Marine Towing*, No. 02-2983, 2004 WL 1737901, at *9 (E.D. La. Aug. 2, 2004) (Livaudais, J.) (holding that the plaintiff's annualized earnings for the year he was injured "[was] the correct base from which his future lost wages should be calculated"); *Daigle*, 322 F. Supp. 2d at 731 (using the *per annum* calculation of the plaintiff's income from the year he was injured to estimate his wage earning capacity for the purpose of determining lost wages); *see also Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1050 (5th Cir. 1990) (affirming the district court's calculation— roughly two-elevenths of the plaintiff's wages from 1988, the year he was injured— because his income had been decreasing dramatically since 1982).

Wolfson's calculations did not involve averaging Lawrence's past earnings or annualizing his 2015 income.[18] Wolfson relied exclusively on Lawrence's 2013 actual earnings to compute his earnings base, which he then used to calculate lost wages. That amount represents Lawrence's highest earnings since 2012.[19]

---

[18] The law does not *require* Lawrence to either annualize his 2015 earnings or average his earnings from 2012 to 2015 to calculate his lost wages. *See Noel*, 2018 WL 1911821, at *3 ("There is no requirement that earnings be averaged over several years, even in circumstances when the plaintiff earned substantially more at the time of injury than in previous years.") (citation omitted). But Lawrence has neither offered factual support for Wolfson's calculation nor cited any case in which a court has permitted the use of a random year's income prior to the year of the accident without providing some justification.

[19] R. Doc. No. 19-2, at 2; R. Doc. No. 19-1, at 6.

7

The Fifth Circuit has never permitted a plaintiff's expert to cherry-pick earnings from a year other than the year the injury occurred without providing any rationale. In its order granting GLDD's motion *in limine* in part, the Court noted Lawrence's failure to provide such a rationale, observing that Lawrence has not "provide[d] the Court with *any* explanation as to why the 2013 figure is a more reasonable starting point than, say, plaintiff's 2015 earnings, or an average across the four years."[20] Additionally, the Court expressed skepticism about the validity of the use of the 2013 figure.[21] In his present motion, Lawrence once again fails to offer any explanation as to why he asked Wolfson to deviate from the general rule stated in *Culver II*. The Court thus concludes that Lawrence has not suffered any injustice as a result of its prior order.

Lawrence also argues that the Court misapplied the Fifth Circuit's directive that "[t]he paramount concern of a court awarding damages for lost future earnings is to provide the victim with a sum of money that will, in fact, replace the money that he would have earned." *Culver*, 722 F.2d at 120. However, it is precisely this concern that guided the Court's decision prohibiting Wolfson from relying exclusively on Lawrence's 2013 earnings. Expert testimony must have an adequate factual foundation. *See* Fed. R. Evid. 702(b). The Fifth Circuit has articulated a standard for calculating lost wages, and Wolfson did not compute his calculations in accordance

---

[20] R. Doc. No. 28, at 9.
[21] Wolfson explained in his expert report that he was "asked to assume earnings consistent with 2013 actual earnings." *Id*. Wolfson did not make an independent determination that the 2013 figure was the most appropriate basis for lost wages calculations. *Id*. Instead, Lawrence *instructed* Wolfson to use that number.

8

with that standard. Moreover, Lawrence does not offer any reason why prohibiting Wolfson from relying *solely* on the 2013 figure would result in a damages award that would unfairly compensate him.

Rule 54(b) "reflects the district court's inherent power to grant relief from interlocutory orders 'as justice requires.'" *Cabral v. Brennan*, 843 F.3d 763, 766 n.3 (5th Cir. 2017) (citation omitted). "But [Lawrence] fail[s] to identify anything resembling . . . an injustice." *Taylor v. Denka Performance Elastomer LLC*, No. 17-7668, 2018 WL 1010186, at *3–4 (E.D. La. Feb. 22, 2018) (Feldman, J.) (citation omitted). Reconsideration of the order prohibiting Wolfson from testifying as to lost wages based solely on Lawrence's 2013 earnings is unwarranted.[22]

---

[22] In support of the present motion, Lawrence directs the Court's attention to another case in which a defendant challenged the admissibility of Wolfson's testimony as an expert witness. *See Fick v. Exxon Mobil Corp.*, No. 13-6608, 2016 WL 7976137, at *3 (E.D. La. Dec. 9, 2016) (Morgan, J.). The *Fick* defendant argued that Wolfson's future earnings calculations should be excluded because they were not based on the plaintiff's earnings at the time of the accident forming the basis of the lawsuit. *Id.* The Court denied the defendant's motion to exclude Wolfson's testimony, explaining that Wolfson's calculations were best challenged through cross-examination and the presentation of contrary evidence at trial. *Id.*

Lawrence urges the Court to follow suit, but *Fick* is sufficiently distinguishable from the present case. First, Wolfson's calculations in *Fick* were based on the plaintiff's "continued *actual*" earnings *after* he was injured. *Id.* The *Fick* plaintiff was injured in 2013 but continued to work and was only seeking lost wages from 2015 until the time of trial. *Id.* at *1, 3. Wolfson's calculations were based on the plaintiff's earnings in 2014, *i.e.*, the amount he was making *after* he suffered the injury at issue. *Id.* at *3. The calculations were therefore "based in fact"; there was nothing speculative about the use of the 2014 figure because it represented the plaintiff's actual earning capacity. *Id.* By contrast, Lawrence asked Wolfson to base his calculations on his 2013 earning capacity—which represents his earnings *two years* before he was injured and which is greater than the amount he was making both at the time of the injury and one year prior.

## IV.

Finally, "if the Court maintains its prior ruling," Lawrence requests that the Court certify its prior order for interlocutory appeal.[23]

> When a district judge, in making in a civil action an order not otherwise appealable under this [Section 1292], shall be of the opinion that [1] such order involves a controlling question of law as to which [2] there is substantial ground for difference of opinion and that an immediate appeal from the order [3] may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "All three factors must be satisfied to warrant this exceptional 'departure from the basic policy of postponing appellate review until the entry of a final judgment.'" *Orpheum Prop., Inc. v. Coscina*, No. 17-6480, 2018 WL 2416685, at *3 (E.D. La. May 29, 2018) (Fallon, J.) (citation omitted). "[T]he moving party bears the burden of demonstrating that interlocutory appeal is appropriate." *Id.* (citing *In re FEMA Formaldehyde Prods. Liab. Litig.*, No. 07-1873, 2008 WL 4923035, at *2 (E.D. La. Nov. 13, 2009) (Engelhardt, J.)).

Interlocutory appeals are not warranted "simply to determine the correctness of a judgment." *Chauvin v. State Farm Mut. Auto. Ins. Co.*, No. 06-7145, 2007 WL 4365387, at *2 (E.D. La. Dec. 11, 2007) (Vance, J.) (quoting *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 68 (5th Cir. 1983)). Lawrence has not

---

Also, Lawrence never suggests the existence of evidence that might show that his future earning potential may someday match his earning potential in 2013—as a result of merit, additional experience, or otherwise. In fact, Lawrence earned less in 2014 than he did in 2013, and he was on track to make less in 2015 as well. Unlike the *Fick* plaintiff, Lawrence has not offered any compelling reason why the Court should reconsider its previous order restricting Wolfson's testimony.
[23] R. Doc. No. 30-1, at 4 n.1.

presented any arguments with respect to whether the Court's order involves a "controlling issue of law"; whether there are "substantial grounds for difference of opinion"; or whether appeal might "materially advance the termination of this case." § 1292(b). Consequently, Lawrence has not met his burden, and the Court declines to certify its prior order for interlocutory appeal.

V.

Accordingly,

**IT IS ORDERED** that Lawrence's motion for reconsideration is **DENIED**.

**IT IS FURTHER ORDERED** that Lawrence's request that the Court certify its prior order for interlocutory appeal is **DENIED.**

New Orleans, Louisiana, July 26, 2018.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**