# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EARL K. LAWRENCE, JR.** | **CIVIL ACTION** |
| **VERSUS** | **No. 17-9775** |
| **GREAT LAKES DREDGE & DOCK CO., LLC OF LOUISIANA** | **SECTION I** |

## ORDER & REASONS

Plaintiff Earl Lawrence ("Lawrence") has filed three objections[1] to defendant Great Lake Dredge & Dock Company, LLC's ("GLDD") proposed trial exhibits. After reviewing the exhibits at issue and considering the applicable Federal Rules of Evidence, the Court rules as follows:

**Robert Borison's Report**

According to the parties' joint proposed pretrial order, Robert "Bob" Borison ("Borison") is a "safety expert" retained by Lawrence who is expected to provide testimony "concerning all issues of negligence, liability, dangerous acts, actions below the standard of care in the industry and all issues of negligence or liability on the part of the defendants [sic] as well as any alleged comparative fault on the part of the plaintiff."[2] At trial, GLDD intends to introduce a report that Borison completed in an unrelated case, *Linton v. Great Lakes Dredge & Dock Company*.[3]

---

[1] *See generally* R. Doc. No. 44.
[2] R. Doc. No. 37, at 31.
[3] *See id.* at 26.

Lawrence objects to the report under Rule 403 of the Federal Rules of Evidence.[4] He contends that any opinions Borison rendered in *Linton* are irrelevant to this matter and that they are "extremely prejudic[ial]" to him (although he does not indicate in what way).[5] He also asserts that Borison's report was never produced.[6] In response, GLDD notes that Borison's report was, in fact, produced as one of the materials its expert, Marc Fazioli, reviewed before issuing his report.[7]

Lawrence alleges that he was injured while moving several 55-gallon drums from inside the vessel's engine room through a small hatch in the top deck overhead, all in accordance with the instructions of his maintenance manager.[8] Because of the way the drums were positioned, Lawrence alleges that they had to be manually moved under the overhead hatch so that the crane lifting the drums from the engine room could reach them.[9] Additionally, because the surface that the drums were sitting on supposedly made it difficult to simply push the drums across the floor, Lawrence contends that he had to tilt the drums and roll them on their edges.[10] Lawrence asserts that his back was injured when he rolled one of the drums into position.[11]

---

[4] Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."
[5] R. Doc. No. 44, at 1.
[6] *Id.*
[7] R. Doc. No. 59, at 1.
[8] R. Doc. No. 37, at 4.
[9] *Id.* at 6–7.
[10] *Id.* at 8.
[11] *Id.*

GLDD argues that Borison's report in *Linton* conflicts with his expert report in this case.[12] According to the information provided by GLDD, *Linton* involved a plaintiff who was injured under the following circumstances:

> [T]he deck barge was loaded with a marsh buggy backhoe, two 55 gallon drums . . . and 35 joints of the dredge's discharge. Mr. Clyde Deese nosed the bow of the deck barge hard against the island to facilitate the unloading of the marsh buggy. . . . While the marsh buggy backhoe was dragging the last joint of pipe to location on the island, Mr. Linton decided to remove the two 55 gallon drums . . . . Because the drums were on the stern of the barge, he decided to tilt the drums over and roll them to the bow of the barge where the marsh buggy backhoe bucket could reach the drums. Instead of waiting for the marsh buggy backhoe's return, before righting the drums, he took it upon himself to lift up on the drums in order to right them. . . . It was during this lifting process that he allegedly sustained his injury.[13]

Borison's report in *Linton* concluded that, after the plaintiff chose to move the drums, "he could have chosen a safer method than to manually lift [them]."[14] For example, Borison's report concluded that the plaintiff "could have titled the drums and rolled them on their edges to the bow of the barge."[15]

Borison concluded in this case that GLDD violated several safety rules by requiring their crew members to tip over, trim, and roll full 55-gallon drums.[16] GLDD argues that Borison's aforementioned conclusion in *Linton* and his conclusion in this case are contradictory; on cross-examination, GLDD intends to use the *Linton* report to impeach Borison.[17]

---

[12] R. Doc. No. 59, at 3–4.
[13] *Id.* at 2–3.
[14] R. Doc. No. 59-1, at 3.
[15] R. Doc. No. 59, at 3.
[16] R. Doc. No. 59-3, at 7.
[17] R. Doc. No. 59, at 3–4.

The *Linton* report, in its entirety, will not be admissible at trial. The Court will defer until trial the determination of whether GLDD may attempt to impeach Borison on cross-examination about his conclusions in *Linton*. The appropriateness of such questioning, and its compliance with the Federal Rules of Evidence, will depend in part on the similarities between the two cases. For example, one of GLDD's grounds for impeachment relies on Borison's opinion in this case that GLDD violated certain safety rules. However, in its opposition to Lawrence's objection, GLDD does not specify whether those rules, or similar rules, were in effect at the time Borison issued the *Linton* report or whether such rules applied to the circumstances surrounding the incident in *Linton*. Such facts are important when attempting to determine whether the report may be used for impeachment purposes. The Court will also address any Rule 403 concerns at that time.

**Records of GLDD's Payment of Maintenance and Cure**

Lawrence objects to records showing that GLDD has paid Lawrence's maintenance and cure;[18] however, as indicated by GLDD, those records were included in the proposed pretrial order only to the extent that maintenance and cure is an issue in this case, which it is not.[19]

---

[18] R. Doc. No. 44, at 2.
[19] R. Doc. No. 59, at 4.

### Lawrence's Medical Records of Other Illnesses and Injuries

Finally, Lawrence objects to several medical records related to illnesses and injuries other than the injuries that Lawrence allegedly sustained as a direct result of the December 2015 incident.[20] Lawrence also filed a separate motion[21] *in limine* with respect to "these records,"[22] and the Court will address Lawrence's arguments in response to that motion.

### CONCLUSION

**IT IS ORDERED** that Earl Lawrence's objections to the exhibits are **SUSTAINED IN PART**, **DEFERRED IN PART** and **DISMISSED IN PART**, in accordance with this order.

New Orleans, Louisiana, November 16, 2016.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[20] R. Doc. No. 44, at 2.
[21] R. Doc. No. 45.
[22] R. Doc. No. 44, at 2.